UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
NISSAN MOTOR ACCEPTANCE CORPORATION,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     16-CV-7028(JS)(ARL)

FIVE TOWNS NISSAN, LLC,
SHMUEL WOLF, NEIL BARBAGALLO,
And ALEX KORCHMAR,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:       Richard A. Braden, Esq.
                     Goldberg Segalla LLP
                     711 Third Avenue, Suite 1900
                     New York, New York 10017

                     Louis Arnold Russo, Esq.
                     Russo Law LLC
                     276 Fifth Avenue, Suite 704
                     New York, New York 10001

For Defendant
Shmuel Wolf:         Annie P. Kubic, Esq.
                     Philip Joseph Campisi, Jr., Esq.
                     Westerman Bail Ederer Miller Zucker &
                     Sharfstein, LLP
                     1201 RXR Plaza
                     Uniondale, New York 10601

SEYBERT, District Judge:

          Plaintiff   Nissan   Motor   Acceptance   Corporation

("Plaintiff") commenced this diversity action against defendant

Shmuel Wolf ("Defendant"), among others,[1] for breach of contract.

---

[1] As discussed in Procedural History, _infra_, Shmuel Wolf is the
sole remaining defendant.

Plaintiff seeks to enforce personal guaranties purportedly executed by Defendant in favor of Plaintiff for all "obligations and liabilities" incurred by Five Towns Nissan, LLC (the "Nissan Dealership") and Five Towns Automotive, LLC (the "Chrysler Dealership," and together with the Nissan Dealership, the "Dealerships"), after the Dealerships defaulted on payments under a Promissory Note.   Currently pending before the Court is Plaintiff's motion for summary judgment. (Mot., D.E. 76; Pl. Br., D.E. 76-1; Def. Opp., D.E. 80; Pl. Reply, D.E. 82.)   For the following reasons, Plaintiff's motion is DENIED.

BACKGROUND[2]

Plaintiff, a California corporation, provides, among other things, secured wholesale inventory floor plan financing for automobile dealerships throughout the United States. (Pl. 56.1 Stmt. ¶ 1.)   The Dealerships operated new and used motor vehicle dealerships in Inwood, New York. (Am. Compl., D.E. 33, ¶¶ 9-10.)[3] Defendant and Neil Barbagallo ("Barbagallo"), who is no longer a defendant in this action, were members of both dealerships. (Pl.

---

[2] The facts are drawn from the parties' Local Civil Rule 56.1 Statement and Counterstatement.   (Pl. 56.1 Stmt., D.E. 76-16; Def. 56.1 Stmt., D.E. 81; Def. 56.1 Counterstmt., D.E. 81, at 11-19.)   The Court notes any relevant factual disputes.

[3] As discussed in Procedural History, infra, on August 13, 2018, Magistrate Judge Arlene R. Lindsay issued an Order deeming the First Amended Complaint the operative complaint. (See Aug. 13, 2018 Order, D.E. 48.)

56.1 Stmt. ¶ 1.)  Defendant states that he was a "passive owner with no operational involvement" while Alex Korchmar ("Korchmar"), who was previously a defendant in this action, oversaw the Dealerships' operations.  (Wolf Decl., D.E. 79, ¶ 4; Def. 56.1 Counterstmt. ¶ 3.)

I.   The Nissan Agreement and the Nissan Guaranty Agreement

On May 19, 2011, Plaintiff and the Nissan Dealership entered into an Automotive Wholesale Financing and Security Agreement (the "Nissan Agreement") pursuant to which Plaintiff "agreed to provide secured wholesale inventory financing to the Nissan Dealership [to] acquire motor vehicles for sale and lease to consumers." (Pl. 56.1 Stmt. ¶ 4; Nissan Agmt., Brooks. Aff., Ex. A, D.E. 76-3.)  The Nissan Agreement governed "the terms and conditions of [Plaintiff's] agreement to establish and maintain for [the Nissan Dealership] a wholesale line of credit" to finance its purchases of new and used vehicles, parts, and other merchandise. (Nissan Agmt. at 1; Brooks. Aff., D.E. 76-3, ¶ 13.) Defendant and Barbagallo signed the Nissan Agreement in their capacities as the "Operating Manager[s]." (Nissan Agmt. at 6.)

In connection with the Nissan Agreement, Defendant and Barbagallo contemporaneously executed a Continuing Guaranty Agreement "to induce [Plaintiff] to extend or continue to extend credit to" the Nissan Dealership (the "Nissan Guaranty"). (Pl. 56.1 Stmt. ¶ 6; Nissan Guaranty, Brooks. Aff., Ex. B, D.E. 76-4,

at ECF pp. 12-16, 17-21.)  As relevant here, Defendant admits that he signed the Nissan Agreement and the Nissan Guaranty.  (Def. 56.1 Stmt. ¶ 6; Wolf Decl., D.E. 79, ¶¶ 2, 13, 17.)

As relevant here, the Nissan Guaranty Agreement provided that Defendant (and Barbagallo) "unconditionally and irrevocably" guaranteed:

> (a) the full and prompt performance and payment of all present and future liabilities of [the Nissan Dealership] to [Plaintiff] irrespective of their nature or the time they arise, and (b) the due and punctual performance and observance of all agreements and indemnities of [the Nissan Dealership] to [Plaintiff]. . . . It is contemplated that this is, and it is intended to be, the personal guaranty of payment and performance of each individual signing below in his or her individual capacity. If any liability guaranteed hereby is not paid when due, Guarantor hereby agrees to and will immediately pay same, without resort by the holder thereof to any other person or party.

(Nissan Guaranty at 1.)  "Liabilities" is defined to include:

> [A]ll obligations and liabilities of [the Nissan Dealership] (whether individually or jointly with others, and whether direct, indirect, absolute or contingent as maker, endorser, guarantor, surety or otherwise) to [Plaintiff], now existing or hereafter coming into existence and renewals or extensions in whole or in part of any of said liabilities . . .
>
> ***
>
> Guarantor acknowledges that there may be future advances by [Plaintiff] to [the Nissan Dealership] . . . and that the number and amount of the liabilities are unlimited and may fluctuate from time to time hereafter. Guarantor expressly agrees that Guarantor's obligations hereunder shall remain absolute, primary and unconditional notwithstanding such future advances and fluctuations, if any.

(Nissan Guaranty at 1, 3.)   The Nissan Guaranty Agreement also provided that Defendant's obligations under the agreement:

> [S]hall be continuing, absolute and unconditional under any and all circumstances and shall be paid by Guarantor regardless of (a) the validity, regularity, legality or enforceability of any of the liabilities or any collateral security or guaranty therefor; . . . or (c) any other event or circumstance whatsoever which may constitute, or might be construed to constitute, an equitable or legal discharge of a surety or a guarantor, it being the purpose and intent of the Guarantor that this Guaranty and the Guarantor's obligations hereunder shall remain in full force and effect and be binding upon Guarantor and Guarantor's successors until the liability and the obligations of Guarantor under this Guaranty shall have been satisfied by payment in full. This Guaranty is a continuing guaranty and shall remain in force at all times hereafter, . . . until a written notice of termination from Guarantor is received and acknowledged by [Plaintiff] . . . .

(Nissan Guaranty at 2.)

II.   The Chrysler Agreement and the Chrysler Guaranty Agreements

On or around April 3, 2013, Plaintiff and the Chrysler Dealership entered into an Automotive Wholesale Financing and Security Agreement (the "Chrysler Agreement") pursuant to which Plaintiff agreed to provide secured wholesale inventory financing to the Chrysler Dealership so it could acquire motor vehicles for sale and lease to consumers.   (Pl. 56.1 Stmt. ¶¶ 12-13; Chrysler Agmt., Brooks Aff., Ex. I, D.E. 76-11.)   The Chrysler Agreement governed the terms under which Plaintiff would, in its discretion, provide a wholesale line of credit to finance new and used vehicles.   (See generally Chrysler Agmt.)   Defendant purportedly

signed the Chrysler Agreement in his capacity as a "Manager." (Chrysler Agmt. at 7.)

In connection with this Agreement, on April 3, 2013, Defendant purportedly executed notarized Continuing Guaranty Agreements (the "Chrysler Guaranties"), individually and as a "Manager," wherein he guaranteed to pay the Chrysler Dealership's present and future liabilities. (Chrysler Guaranties, Brooks Aff., Ex. J, D.E. 76-12, at ECF pp. 7-11, 17-23.) Unlike the Nissan Agreement and Nissan Guaranty, Defendant denies signing the Chrysler Agreement and the Chrysler Guaranties because he was not in New York on the date these agreements were signed. (Def. 56.1 Stmt. ¶¶ 12-13, 15; Def. 56.1 Counterstmt., at ECF p. 13, ¶¶ 14-16.)

III. The Cross-Collateral Agreement

On April 4, 2013, one day after the purported execution of the Chrysler Agreement and the Chrysler Guaranties, Plaintiff and the Dealerships, Defendant, and Barbagallo entered into a Cross-Guaranty, Cross-Collateral, and Cross-Default Agreement (the "Cross-Collateral Agreement") in which Defendant, and others, agreed to "cross-guaranty, cross-default, and cross collateralize all" of the Dealerships' present and future obligations and liabilities to Plaintiff under the Nissan and Chrysler Agreements and respective Guaranty Agreements. (Pl. 56.1 Stmt. ¶ 7; Apr. 4, 2013 Cross-Collateral Agmt., Brooks Aff., Ex. C, D.E. 76-

5, at 1.)  Defendant and Barbagallo purportedly signed the Cross-Collateral Agreement as guarantors and as "Operating Manager/Member" of the Dealerships.  (Cross-Collateral Agmt. at 5.)  Defendant denies executing the Cross-Collateral Agreement and states that his signature "materially differs from that which appears on the" Nissan Guaranty Agreement.[4]  (Def. 56.1 Stmt. ¶ 7; Def. 56.1 Counterstmt. ¶ 11.)

IV.  <u>The Capital Loan Agreement</u>

On August 12, 2013, Plaintiff and the Nissan Dealership entered into a Capital Loan and Security Agreement (the "Capital Loan Agreement"), pursuant to which Plaintiff loaned the Nissan Dealership $1,129,937.23, to be repaid in monthly installments with interest.  (Pl. 56.1 Stmt. ¶ 8; Capital Loan Agmt., Brooks Aff., Ex. F, D.E. 76-8.)  Defendant allegedly signed the Capital Loan Agreement on behalf of the Nissan Dealership.  (Capital Loan Agmt. at ECF pp. 3, 14.)  In connection with the Capital Loan Agreement, Defendant, in his individual capacity and as a member of the Chrysler Dealership, purportedly executed a document titled "Reaffirmation of Guarantors" wherein he consented to the terms of the Capital Loan Agreement and acknowledged that he and the Chrysler Dealership "guaranteed all present and future indebtedness of [the Nissan Dealership] to [Plaintiff] pursuant to

_____

[4] Plaintiff submitted exhibits of all agreements but redacted every signature.

their respective guaranties," and reaffirmed their guaranties. (Reaffirmation of Guarantors, Brooks Aff., Ex. G, D.E. 76-9.)

Defendant denies signing the Capital Loan Agreement and the Reaffirmation of Guarantors, arguing that he was in Atlanta, Georgia on the day the Agreements were allegedly signed, and because his signature "materially differs" from his signature on the Nissan Guaranty. (Def. 56.1 Stmt. ¶ 8; Def. 56.1 Counterstmt., ¶¶ 21-23.)

V.   The Alleged Defaults under the Agreements

On February 18, 2014, Plaintiff sent the Dealerships a letter (the "Letter") referencing a Forbearance Agreement, dated December 18, 2013 (the "Forbearance Agreement").[5] (Feb. 18, 2014 Ltr., Brooks Aff., Ex. D, D.E. 76-6.) The Letter states that the "Dealerships have failed to comply with the terms and conditions of the Forbearance Agreement" and that Plaintiff decided to "immediately institute an orderly termination of its wholesale lending relationships with your Dealerships." (Feb. 18, 2014 Ltr. at 1.) The Letter further stated:

> [E]ffective as of May 30, 2014, [Plaintiff] will terminate its Wholesale Agreements with each of your Dealerships, pursuant to their terms, at which date all financing obligations under those Wholesale Agreements and all other Loan Documents, including the Capital Loan Agreement between [Plaintiff] and the Nissan Dealership dated August 12, 2013, must be paid in full. . . . [E]ffective the date of this Notice, the Nissan

---

[5] Neither party attached the Forbearance Agreement as an exhibit nor did they explain its significance.

> Dealership's Used Non-Nissan Demo and Used-Demo
> wholesale credit lines have been suspended, and the
> outstanding balances on those lines, as stated in
> Exhibit "A", must be paid in full on or before March 14,
> 2014.

(Feb. 18, 2014 Ltr. at 1.)  Exhibit "A" to the letter indicated
that the balance on the Nissan Dealership's Used Non-Nissan Demo
and Used Demo was $551,367.10 and $207,208.04, respectively.
(Feb. 18, 2014 Ltr. at 3.)  Plaintiff also alleges that the
Chrysler Dealership defaulted on its obligations under the
Chrysler Agreement by, among other things, failing to timely pay
sums due and owing for wholesale interest obligations and failing
to maintain minimum capitalization amounts.  (Brooks. Aff. ¶ 35.)

By letter dated July 2, 2014, Plaintiff conditionally
agreed to extend the date of termination on condition that, among
other things, (1) on July 15, 2014 and July 31, 2014, the Nissan
Dealership make two separate payments of $125,000 towards the
Capital Loan and (2) the Chrysler Dealership provide a copy of a
written lending commitment from another lender agreeing to
refinance the Chrysler Agreement.  (July 2, 2014 Ltr., Brooks
Aff., Ex. E, D.E. 76-7, at 1.)  The Dealerships did not sign or
agree to the conditional extension.  (Pl. 56.1 Stmt. ¶ 20.)

In July and August 2014, the Nissan Dealership breached
the Nissan Agreement because it defaulted on the Capital Loan
Agreement by, among other reasons, failing to pay monthly
installments.  (Pl. 56.1 Stmt. ¶ 8; Brooks Aff., D.E. 76-2, ¶¶ 26-

27.)   By letter dated August 28, 2014, Plaintiff notified the Nissan Dealership that it accelerated all indebtedness under the Capital Loan Agreement and declared all principal and interest immediately due, totaling $883,495.25 as of July 31, 2014. (Aug. 28, 2014 Ltr., Brooks Aff., Ex. H, D.E. 76-10.)   The Nissan Dealership never paid the amount due.   (Pl. 56. Stmt. ¶ 11.)

As a result of the Dealerships' ongoing defaults, Plaintiff exercised its rights under Sections 5.2 of the Nissan and Chrysler Agreements to accelerate the remainder of payments due for financing the vehicle inventory and, with respect to the Nissan Agreement, suspended all financing effective August 1, 2014. (Brooks Aff. ¶¶ 21, 40.)   Plaintiff did not submit a copy its notice of acceleration and suspension.

By letter dated August 5, 2014, Plaintiff demanded $60,809.70 from the Nissan Dealership, the amount owed for vehicles it sold.   (Brooks Aff. ¶ 20.)   By another letter dated August 5, 2014, Plaintiff also demanded $168,932.72 from the Chrysler Dealership, the amount owed for vehicles it sold. (Brooks Aff. ¶ 39.)  According to Plaintiff, the Dealerships' failure to turn over those funds resulted in a "sales out of trust" ("SOT") and constituted a breach of the Nissan and Chrysler Agreements because Plaintiff "lost its vehicle collateral and the [ ] Dealership[s] received the proceeds for the sales and used the money for other purposes--effectively reducing [Plaintiff's

collateral that secures its loans of money to the [ ] Dealerships."
(Brooks Aff. ¶¶ 20, 39.)  Plaintiff did not submit copies of the
August 5, 2014 letters.

## VI. The Replevin Action, the Promissory Note, and the Confession of Judgment

On August 29, 2014, Plaintiff initiated a separate
action against Defendant, the Dealerships, Barbagallo, and
Korchmar seeking, among other things, an order of seizure of
Plaintiff's collateral (the "Replevin Action") arising out of the
Dealerships' refusal to pay the amounts owed to Plaintiff.  (Pl.
56. Stmt. ¶ 11; see Replevin Action, No. 14-CV-5144 (E.D.N.Y. 2014)
(Wexler, J.).)

On September 29, 2014, the Court so-ordered a
Stipulation permitting the Replevin Action defendants "to arrange
for one or more executed asset purchase agreements involving the
sale of assets of [the Dealerships]" by the close of business on
October 3, 2014.[6]  (No. 14-CV-5144, D.E. 17.)  On January 5, 2015,
during the Replevin Action, Korchmar, in his individual capacity,
and the Dealerships, by Defendant, executed a Promissory Note

---

[6] "Judicial notice of public records . . . is clearly
appropriate."  In re Enron Corp., 379 B.R. 425, 431 n.18
(S.D.N.Y. 2007) (citing Kramer v. Time Warner Inc., 937 F.2d
767, 774 (2d Cir. 1991)).  However, a court may take judicial
notice of a public record "not for the truth of the matters
asserted" in the document "but rather to establish the fact"
that the document exists.  Liberty Mut. Ins. Co. v. Rotches Pork
Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) (internal
quotation marks and citation omitted).

promising to pay Plaintiff $2,830,797.00 in monthly installments. (Promissory Note, Brooks Aff., Ex. K, D.E. 76-13.)  The Promissory Note was secured by an Affidavit of Confession of Judgment, signed by Korchmar, in his individual capacity, and the Dealerships, by Defendant.  (Aff. Confession of J., Brooks Aff., Ex. L, D.E. 76-14, ¶ 5.)  The Affidavit of Confession of Judgment provided that the Dealerships and Korchmar "jointly and severally confess[ed] judgment and authoriz[ed] the entry thereof against [the Dealerships and Korchmar] in the same of $2,830,797.00 or for such lesser amount as may be due pursuant to the terms of certain Promissory Note they executed in favor of plaintiff in January 2015." (Aff. Confession of J. ¶ 5.)  The Affidavit of Confession of Judgment recited that the debt arose from:

> a. Beginning in or around May 19, 2011, plaintiff entered into Automotive Wholesale Financing and Security Agreements (the "WFA's") with [the Dealerships] whereby plaintiff agreed to provide secured wholesale inventory floor plan financing to [the Dealerships] so that they could acquire new and used motor vehicles for sale and lease to consumers. At various times, and as required by plaintiff, Alex Korchmar, Neil Barbagallo, and Shmuel Wolf [Defendant] executed continuing Guaranty Agreements whereby they each guaranteed all obligations of [the Dealerships] to plaintiff.   Notwithstanding the foregoing, Shmuel Wolf maintains that he only executed one Continuing Guaranty Agreement with regard to [the Nissan Dealership] on May 19, 2011.

> b. [The Dealerships] thereafter defaulted in their obligations under the [Nissan and Chrysler Agreements] and ultimately sold substantially all of their assets to a third party and applied

12

a portion of the sale proceeds to debts owing to plaintiff arising under the [Agreements]. Despite the payment of a portion of the asset sale proceed to debts owing to plaintiff, there was deficiency in the amount of $2,830,797.00.

c. Prior to the sale of substantially all of the [Dealerships'] assets, plaintiff commenced [the Replevin Action] . . . to recover judgment. . . for damages well in excess of the deficiency amount. In order to convince plaintiff to agree to dismiss [the Replevin Action] as against [the Dealerships and Korchmar], and to permit [the Dealerships] to sell substantially all of their assets to a third party despite the existence of the deficiency amount, [the Dealerships and Korchmar] executed the [Promissory] Note and plaintiff is entitled to file this confession of judgment against them for the amount due thereunder in the event of a breach or default under the terms of the note.

(Aff. Confession of J. ¶ 6.)

Korchmar and the Dealerships defaulted on their obligations under the Promissory Note and on July 21, 2015, Plaintiff entered the Affidavit of Confession of Judgment to recover $1,848,128.54 (the "Judgment"). (Pl. 56.1 Stmt. ¶ 27; J., Brooks Aff., Ex. M, D.E. 76-15.)  The Judgment amount reflected a $982,893.46 credit--consisting of $519,893.46, received from a NYS Sales Tax Escrow Account payment, $416,064.21 from the sale proceeds of vehicles purchased by Rockaway Nissan (the buyer at the December 2014 asset sale) and auction proceeds for vehicles sold via public auctionand $225 in statutory costs. (Brooks Aff. ¶ 46; J.)  Neither party submitted evidence surrounding the asset sale or auction.  On September 2, 2015, the Court so-ordered a

13

stipulation of dismissal dismissing claims against the Dealerships and Korchmar, without prejudice. (No. 14-CV-5144, D.E. 22.) On November 28, 2016, the court entered a so-ordered stipulation of dismissal dismissing claims against Defendant and Barbagallo, without prejudice, and closed the Replevin Action. (No. 14-CV-5144, D.E. 40.)

Defendant admits that he signed the Promissory Note and the Affidavit of Confession of Judgment on behalf of the Dealerships as their "Operations Manager/Member," but argues that he did not "agree to confess to any judgment and/or Note or other payment obligations to [Plaintiff], individually." (Def. 56.1 Stmt. ¶ 24; Def. 56.1 Counterstmt. ¶ 34; Wolf Decl. ¶ 39.) Rather, according to Defendant, the Promissory Note and the Confession of Judgment were executed to settle the Replevin Action. (Wolf Decl. ¶ 38.)

In a December 12, 2014 email chain outlining "Final [ ] Conditions for Closing," Plaintiff listed certain conditions required "to release its security interest to the extent of any collateral sold" by the Dealerships. (Dec. 12, 2014 Email, Wolf Aff. Ex. 9, D.E. 79-9, at 1.) Plaintiff required, among other things, the execution of the Promissory Note and Confession of Judgment, with "all payments to be credited in the following order: (1) first, to the [Nissan Dealership] floor plan deficiency, (2) second, to the Overpayment amount, (3) third, to the [Chrysler

14

Dealership] floor plan deficiency, and (4) finally, to the unpaid Capital Loan (Loan # 3476-20001) amount as listed in [Plaintiff's] closing statement." (Dec. 12, 2014 Email at 1, ¶ 4.)

As expressed in that email, the parties agreed that the Promissory Note and the Confession of Judgment would "not reference [Defendant] in his individual capacity." (Dec. 12, 2014 at 1, ¶ 4.) The email also states that Plaintiff required "written acknowledgment by Guarantors that, by releasing its security interest, [Plaintiff] is not waiving or discharging any rights I may have to enforce the Guaranty Agreements with respect to any post-closing deficiencies or breaches." (Dec. 12, 2014 Email at 1, ¶ 5.) Neither party submitted any additional details surrounding the "Conditions for Closing" and whether the terms were accepted, denied, or modified.

## PROCEDURAL HISTORY

Plaintiff initiated this action on December 21, 2016. (Compl., D.E. 1.) On February 14, 2018, the Court adopted Magistrate Judge Arlene R. Lindsay's Report and Recommendation (R&R, D.E. 28) and dismissed Plaintiff's third cause of action for money had and received against Defendant, Barbagallo, and Korchmar. (Feb. 14, 2018 Order, D.E. 31, at 5-6.) The Court also granted Plaintiff leave to file an amended complaint. (Feb. 14, 2018 Order at 6.) On April 16, 2018, Plaintiff filed an

Amended Complaint and on July 12, 2018, filed a Second Amended Complaint.  (Am. Compl., D.E. 33; Second Am. Compl., D.E. 41.)

On August 13, 2018, Judge Lindsay issued an Order dismissing claims against the Nissan Dealership and Korchmar and deeming the First Amended Complaint the operative complaint. (Aug. 13, 2018 Order, D.E. 48.)  On April 17, 2019, the Court entered a So-Ordered stipulation dismissing claims by and against Neil Barbagallo with prejudice.  (Apr. 17, 2019 Order, D.E. 67.)

On August 30, 2019, Defendant filed an answer and asserted (1) cross-claims against Korchmar and Plaintiff for contribution and indemnification, against Korchmar for fraud and breach of fiduciary duty and (2) counterclaims against Plaintiff for declaratory and injunctive relief.  (Answer, D.E. 74.)

Plaintiff now seeks summary judgment on its remaining claims against Defendant for (1) breach of continuing guaranties (Count I) and (2) attorneys' fees, costs, and expenses (Count II).

<u>ANALYSIS</u>

I.  <u>Legal Standards</u>

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed 2d 202 (1986).   In determining whether summary judgment is appropriate, the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact.   Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).   Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted).   Conclusory allegations or denials will not defeat summary judgment.   Id.   However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"   Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

II.   Discussion[7]

---

[7] The parties do not dispute the application of New York law.

Put simply, Plaintiff seeks to hold Defendant personally liable for the Judgment by virtue of Defendant's obligations under the Nissan Guaranty, the Chrysler Guaranties, and the Cross-Collateral Agreement. (Pl. Br. at 8.) Plaintiff further argues that Defendant is liable regardless of whether his signatures on the various agreements were forged because Defendant admits to signing the Nissan Guaranty that "absolutely and unconditionally guaranteed payment of all amounts due under [the] Promissory Note that the Nissan Dealership executed in [Plaintiff's] favor" (Pl. Br. at 13.) Defendant responds that the Nissan Guaranty "relates only to the Nissan Dealership's debts" and he is therefore not liable for "any and all debt ever incurred by the Nissan Dealership," such as the Confession of Judgment, and for the Chrysler Dealership's debts. (Def. Opp. at 6 (emphasis omitted).)

"To obtain summary judgment to enforce a written guaranty, 'all that the creditor need prove is an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty.'" 136 Field Point Circle Holding Co., LLC v. Invar Int'l Holding, Inc., 644 F. App'x 10, 11–12 (2d Cir. 2016) (quoting City of N.Y. v. Clarose Cinema Corp., 256 A.D.2d 69, 71 (N.Y. App. Div. 1998)).

A.   The Nissan Guaranty

Plaintiff argues that at least the Nissan Guaranty obligates Defendant to personally satisfy the Nissan Dealership's

debts under the Promissory Note and Judgment.  As to the Nissan Guaranty's enforceability, the Court has little doubt that its unambiguous terms reflect that it is continuing in that it applies to "all obligations and liabilities of [the Nissan Dealership] (whether individually or jointly with others, and whether direct, indirect, absolute or contingent as maker, endorser, guarantor, surety or otherwise) to [Plaintiff], now existing or hereafter coming into existence and renewals or extensions in whole or in part of any of said liabilities."  (Nissan Guaranty at 1.)

However, the Court finds that an issue of material fact exists as to whether the parties intended for Defendant to maintain responsibility for the Nissan Dealership's obligations through the negotiation of the Promissory Note secured by the Affidavit and Confession of Judgment.[8]  See, e.g., Vinmar, Inc. v. Vaswani, No. 94-CV-2841, 1997 WL 1068668, at *2 (E.D.N.Y. May 30, 1997).

"As a general principal of New York law, any alteration of the terms of an underlying contract, for whose performance a guarantor is bound, and without the guarantor's consent, will release the guarantor from his or her obligations." United Natural Foods, Inc. v. Burgess, 488 F. Supp. 2d 384, 390-91 (S.D.N.Y. 2007)

---

[8] Indeed, if the Promissory Note discharged Defendant's obligations under the other agreements and guaranties, there is no need to determine their authenticity.  Thus, the Court's analysis is limited to the Nissan Guaranty because there is no dispute as to its authenticity.

(citations omitted).  "'An obligation is altered when the debtor is discharged from the original contract and a new contract is substituted in its place.  The test is whether there is a new contract which will be enforced by the courts.'"  Id. at 391 (quoting Bier Pension Plan Tr. v. Estate of Schneierson, 74 N.Y.2d 312, 315, 545 N.E.2d 1212, 1214, 546 N.Y.S.2d 824 (1989)).  In those circumstances, "'the principal is no longer bound to perform the obligation guaranteed,' so the guarantor likewise cannot be 'held responsible for the failure of the principal to perform.'"  Id. (quoting Becker v. Faber, 280 N.Y. 146, 148-49, 19 N.E.2d 997, 998 (1939)).  Courts consider: "the extension of time in which to pay a debt, if the extension is an enforceable agreement superseding the original debt and not merely leniency by the creditor; a change in the contract price; modification of the loan terms, such as reducing loan collateral; or a change in the parties to the principal contract."  Id. (internal quotation marks and citations omitted).

     For the following reasons, the Court cannot as a matter of law determine whether the Promissory Note and accompanying Affidavit of Confession of Judgment altered the Dealerships' obligations under its prior agreements with Plaintiff.  See Id., 488 F. Supp. 2d at 393-94.  Important in this analysis is the December 14, 2014 email that details Plaintiff's "Conditions for

Closing,"[9] wherein Plaintiff required that the Dealerships and Korchmar execute the Promissory Note and Affidavit of Confession of Judgment, among other conditions, to "release its security interest to the extent of any collateral sold to buyer" by the Dealership.  (Dec. 12, 2014 Email at 1.)

First, the Promissory Note and the Affidavit of Confession of Judgment state that the Dealerships and Korchmar, jointly and severally, owe Plaintiff a "deficiency amount" of $2,830.797.00 ($1,848,128.54 after credits).  The Court struggles to follow how Plaintiff calculated $2,830.797.00 as the "deficiency amount."  The Court is left to query whether this is a negotiated sum that, if paid, would satisfy both Dealerships' prior debts or whether it is a calculation based on the

---

[9] To the Court's surprise, there are little facts surrounding the negotiation and execution of the "Conditions for Closing" email, the Promissory Note, and the Affidavit of Confession of Judgment.  Plaintiff dismisses the email as "unauthenticated." (Pl. Reply at 2.)  The Court retains discretion to consider the email because Defendant may be able to authenticate it at trial and because Defendant disclosed it on February 28, 2019 as an exhibit in its Rule 56.1 Statement.  (Dec. 12, 2014 Emails, Def. Feb. 28, 2019 56.1 Stmt., Ex. 9, D.E. 62-9); Purcell v. Navient Sols., LLC, No. 18-CV-6045, 2019 WL 188693, at *6 n.11 (S.D.N.Y. Jan. 14, 2019).  Based on the record, the Court cannot determine whether the "Conditions for Closing," as reflected in the email, were accepted, modified, or rejected, the parties should also endeavor to discover additional information regarding the "Conditions for Closing."

Dealerships' individual defaults under certain, unspecified agreements.[10]

Second, there is evidence that payments Plaintiff received under the Promissory Note were to be first applied to the Nissan Dealership's floor plan deficiency. (Dec. 14, 2014 Email at 1 ¶ 4; Brooks Dep., 60:7-20.) Third, as part of the "Conditions for Closing," Plaintiff required "written acknowledgment by Guarantors that, by releasing its security interest, [Plaintiff] is not waiving or discharging any rights that it may have to enforce the Guaranty Agreements with respect to any post-closing deficiencies or breaches." (Dec. 12, 2014 Email at 1 ¶ 5.) Neither party points to evidence regarding the identity of the referenced guarantors, whether those guaranty agreements included

---

[10] Randal G. (Randy) Brooks, Plaintiff's Inventory Control Manager (see Brooks Aff. ¶ 1), testified that the $2.8 million "was determined by the balances that were due based on inventory and the cap[ital] loan and additional charges that were due" and that Plaintiff would have "a breakdown of exactly what those charges were." (Brooks Dep., Wolf Aff., D.E. 79-4, 53:12-14, 55:15-16.) Without that information, however, in the former scenario, if Defendant "continued to be liable on the original obligation, [P]laintiff could in theory proceed against both [Defendant] on the original obligation and the [Dealerships and Korchmar] on the new obligation, potentially collecting twice." Burgess, 488 F. Supp. 2d at 394. While the Court is aware that the Nissan Dealership is alone liable for the Judgment, in the latter scenario, the Nissan Guaranty guaranteed only the Nissan Dealership's performance and payment so if the "deficiency amount" includes debts owed by the Chrysler Dealership, it arguably falls outside the scope of the Nissan Guaranty. However, here, the Court cannot ascertain the source and amount of the original debts that became the "deficiency amount" reflected in the Promissory Note.

the Nissan Guaranty, or whether those guarantors agreed to be bound by the terms of the "Conditions for Closing." Fourth, the parties do not dispute that the Promissory Note and the Affidavit of Confession of Judgment explicitly excluded Defendant in his individual capacity. Fifth, the Promissory Note contains an unconditional guaranty: the Dealerships and Korchmar "acknlowedge[d] that the obligations hereunder are unconditional and cannot be setoff, reduced or suspended as a result of any obligations . . . under any circumstance." (Promissory Note at 1.) Sixth, Korchmar testified to his understanding that the Promissory Note and Confession of Judgment "extinguished the old debt," that he negotiated a resolution to take on the Promissory Note "instead of [Defendant] and Mr. Barbagallo," and that "there would be no more claims against [Defendant] or Barbagallo." (Korchmar Dep., Wolf Decl., Ex. 13, D.E. 79-13, 18:6-10, 58:11-59:6, 60:3-6.) Finally, the Promissory Note extended the time for the Dealerships and Korchmar to pay off the Dealerships' individual debts.

Thus, while the Nissan Guaranty contains an "advance consent to modifications" clause, which is valid and enforceable under New York Law (see CrossLand Fed. Sav. Bank by F.D.I.C. v. A. Suna & Co., 935 F. Supp. 184, 200 (E.D.N.Y. 1996), the above-listed considerations raise questions regarding the parties' intentions in executing the Promissory Note and Affidavit of

23

Confession of Judgment.  (Nissan Guaranty at 3.)  Consequently, the Court cannot determine whether the Nissan Dealership's debts arising out of the Judgment fall within the scope of the Nissan Guaranty because an issue exists as to whether the parties entered into "a new enforceable obligation that superseded the Plaintiff's rights under the past" agreements and discharged Defendant's obligations under any guaranty.  Burgess, 488 F. Supp. 2d at 392; cf. HSH Nordbank AG N.Y. Branch v. St., 421 F. App'x 70, 75 (2d Cir. 2011) (finding that later agreement did not obviate guarantor's obligations under the "broad waiver provisions" of guaranties where the later agreement included language that it was not "intended (and shall not be deemed or construed) to effect an amendment, modification, restructuring or reinstatement of the [original agreement], which remains in default and accelerated.") (internal quotation marks omitted).  Accordingly, there are issues of material fact and Plaintiff's motion for summary judgment is DENIED.[11]

    B.    <u>The Chrysler-Related Agreements, the Cross-Collateral Agreement, the Capital Loan Agreement, and the Reaffirmation of Guarantors</u>

Defendant also argues that the Chrysler Agreement, the Chrysler Guaranties, the Cross-Collateral Guaranty, the Capital

---

[11] Accordingly, because the Court cannot determine whether the Nissan Guaranty encompasses the Nissan Dealership's debts under the Promissory Note and Judgment, the Court does not analyze damages.

Loan Agreement, and the Reaffirmation of Guarantors were forged and therefore are not enforceable as against him. (Def. Opp. at 4-6.) In response, Plaintiff faults Defendant for failing to timely disclose all documents and witnesses and for failing to respond to discovery requests. (Pl. Reply at 4.) Plaintiff asks the Court to exclude all evidence Defendant submitted in opposition because "such failures are not harmless." (Pl. Reply at 4; Braden Aff., D.e. 82-1, ¶ 19.)

"Rule 37(c)(1) provides a basis for refusing to admit evidence if it has not previously been submitted in compliance with Rule 26(a)." Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc., No. 01-CV-4788, 2006 WL 587483, at *4 (S.D.N.Y. Mar. 8, 2006). "In considering whether to exclude evidence under this standard, courts refer to a nonexclusive list of four factors: (1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance." Agence France Presse v. Morel, 293 F.R.D. 682, 685 (S.D.N.Y. 2013).

Here, there is no doubt that Plaintiff has been on notice that Defendant denied signing the Chrysler Agreement, the Chrysler Guaranties, the Cross-Collateral Guaranty, the Capital Loan Agreement, and the Reaffirmation of Guarantors, as reflected in the facts giving rise to the Affidavit of Confession of Judgment. (See Aff. Confession of J. at ¶ 6.) However, given that there is

25

a question as to whether the Promissory Note released Defendant from the Nissan Guaranty, and any other guaranty, the Court cannot now determine whether the Chrysler-related guaranties are enforceable against Defendant and if so, whether they encompass the Dealerships' debts under the Judgement.

CONCLUSION

For the stated reasons, Plaintiff's motion for summary judgment (D.E. 76) is DENIED.  To the extent needed, the Court refers the parties to Judge Lindsay to set a schedule for Plaintiff to discover any additional information from Defendant regarding its claims of forgery and the execution of the Promissory Note (see supra, Note 9).  Within thirty (30) days of the date of this Order, the parties are to submit a joint letter (1) clarifying all remaining claims, crossclaims, and counterclaims, (2) whether there are any outstanding substantive or scheduling issues to address, and (3) whether they wish to schedule a settlement and/or discovery conference with Judge Lindsay.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May   29  , 2020
       Central Islip, New York